NO. 4-03-0916

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of

COURTNEY L. CASE, n/k/a COURTNEY MAMMENGA,

          Petitioner-Appellee,

          and

MICHAEL R. CASE,

          
Respondent-Appellant.

)

)

)

)

)

)

)

)

 Appeal from

 Circuit Court of 

 McLean County

 No. 94D317

      

 Honorable

 John P. Freese,

 Judge Presiding.

______________________________________________________________
_

JUSTICE TURNER 
delivered the opinion of the court:

Respondent, Michael R. Case, appeals the September 30, 2003, order of the McLean County circuit court, awarding petitioner, Courtney L. Case (now known as Courtney Mammenga), a $35,849 judgment for back child support.  Specifically, Michael asserts the trial court erred in finding Courtney was equitably estopped from seeking back child support only for the period of April 12, 1999, to December 19, 2001.  We affirm. 

I. BACKGROUND

The parties were married in June 1990 and have two children together, Jordan (born in February 1990) and Mackenzy (born in June 1991).  

In June 1994, Courtney filed a petition for dissolution of marriage.  She was represented during the divorce proceedings by E. William Rolley.  In August 1994, the trial court awarded Courtney temporary custody of the minor children and ordered Michael to pay $400 in child support every two weeks.  In December 1995, the court entered a judgment of dissolution on grounds only.  

In July 1996 and July 1997, Courtney filed petitions for a rule to show cause, contending Michael's child-support payments were in arrears.  In November 1997, Michael filed a petition to modify child support, asserting he was a full-time student and had no job.  In September 1998, the trial court entered a supplemental judgment order, ordering Michael to pay $200 per month in child support starting September 5, 1998, and expressly reserving the matter of the child-support arrearage.

On April 12, 1999, the parties entered into an agreement (Agreement), under which Michael was to sign a consent to adoption and waiver of parental rights for each of the minor children and, in consideration, Courtney would not seek to collect current or back child support.  That same day, Michael signed a consent to adoption for both of the children.  In June 1999, Courtney married Brian Mammenga.

In March 2000, Courtney executed a limited power of attorney and authorization to release information to CSE Child Support Enforcement, Co.  In June 2000, that organization requested copies of the court orders in this case.  In October 2001, the Illinois Department of Public Aid (Department)
 began filing notices to withhold income for child support to several of Michael's employers.  In December 2001, a $200 child-support payment was withheld from Michael's paycheck. 

In November 2002, the Department filed a petition for adjudication of indirect civil contempt, arguing Michael owed $32,956.81 in back child support.  That same month, Michael filed a motion to establish specific visitation times with the minor children.  In February 2003, Michael filed a motion to dismiss the Department's petition, alleging Courtney could not seek payment of current and back child support because of the Agreement.  

In April 2003, the trial court granted Courtney leave to withdraw the contempt petition and to file an alternative pleading.  Courtney then filed a motion for judgment, seeking a judgment of $32,856.81 plus interest for back child support.  That same month, Courtney and her husband filed a petition for adoption, No. 3-AD-21 (Circuit Court of McLean County).  In May 2003, Michael filed a motion to dismiss Courtney's motion for judgment, again asserting she was estopped from seeking support because of the Agreement. 

On May 20, 2003, the trial court held a joint hearing on Michael's motion to dismiss and Courtney's motion for judgment.  Guy Parr, superintendent of Heyworth Community Unit No. 4, testified the minor children were first enrolled in his district in the fall of 1999 with the last name Mammenga.  The children were registered under that name until the fall of 2002 when Michael informed Parr the children's legal name was Case.

Lori McCormick, deputy director of juvenile court services for McLean County, testified one of her job responsibilities was to witness consents to adoption.  She recognized her signature as a witness on the consents to adoption executed by Michael on April 12, 1999.  Her records indicated Michael's appointment had been set up by Rolley.  She did not know what happened to the original copies of the consents.

Michael testified Courtney approached him about having Brian adopt the children so they could have his last name.  On April 12, 1999, Michael, Courtney, and Brian met at Rolley's office, and Michael agreed to sign the consents if he would not be responsible for past or current child support.  Rolley drafted an agreement, indicating Courtney would not seek to collect any current or back child support in consideration of Michael signing the consents to adoption.  Michael and Courtney both signed the letter despite Rolley noting his disagreement with the letter.  The parties then went to juvenile court services, and Michael alone met with McCormick.  He then signed the consents to adoption, and McCormick kept the originals.  

After signing the consents, Michael did not visit the children, did not talk with Courtney, and just assumed Courtney had followed through with the adoption.  On December 12, 2001, Michael had a $200 child-support payment withheld from his paycheck.  In April 2002, Michael spoke with Courtney and learned the adoption had not been completed.  Michael then resumed visitation with the children.  He testified he would have revoked the consents if the law permitted him to do so.

Courtney testified Rolley had the agreement already prepared when the parties arrived at his office.  After they signed the Agreement, Courtney left with Brian and did not go with Michael to the courthouse.  Courtney stated she was unaware that Michael had gone to the courthouse and executed the consents.  According to Courtney, Rolley never informed her that Michael had signed the consents, and she was first aware of the consents when Michael filed his motion to dismiss.  Courtney had  not gone through with the adoptions because of the costs of an adoption without a consent. 

Brian testified his adoption of the children had been finalized the day before the hearing.  He also testified Courtney left Rolley's office with him.

In September 2003, the trial court entered an order, (1) denying Michael's motion to dismiss; (2) finding Courtney was estopped from receiving child support and interest accruing from April 12, 1999, to December 19, 2001; (3) concluding child support accrued through May 20, 2003, on which date child support terminated; and (4) awarding Courtney a $35,840 judgment for back child support.  This appeal followed.

II. ANALYSIS

A. Appellee Brief

 On appeal, Courtney, the appellee, has not filed a brief.  
A reviewing court is not compelled to serve as an advocate for the appellee and is not required to search the record for the purpose of sustaining the trial court's judgment.  However, if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court should decide the merits of the appeal.  On the other hand, if the appellant's brief demonstrates 
prima
 
facie
 reversible error and the contentions in the brief find support in the record, the trial court's judgment may be reversed.  
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976). 

B. Equitable Estoppel

Michael contends the trial court erred in limiting its application of equitable estoppel to the child support and interest that accrued between April 12, 1999, and December 19, 2001.  We will not disturb such a finding unless it is against the manifest weight of the evidence.  See 
In re Marriage of Smith
, 347 Ill. App. 3d 395, 401, 806 N.E.2d 727, 732 (2004). 

 On April 12, 1999, when Michael signed the consents to adoption and the Agreement, he owed Courtney child support that had already accrued.  Around December 19, 2001, Michael had $200 withheld from his paycheck for child-support payments and made some child-support payments thereafter.  Thus, the trial court's order required Michael to pay (1) the child support that had accrued before April 12, 1999, and (2) any unpaid support that had accrued from December 19, 2001, to May 20, 2003, the day after the adoption.
  Since the above time periods have different considerations, we will address them separately.  

1. 
Before
 
April
 
12
, 
1999

As stated, Michael owed an unspecified amount of back child support when he signed the agreement and the consents on April 12, 1999.  The Agreement provided that Courtney would not seek payment of that back child support.

 Equitable estoppel applies when a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person.  
Smith
, 347 Ill. App. 3d at 399, 806 N.E.2d at 730.
  The party asserting estoppel must have relied upon the other person's acts or representations and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable.  
Smith
, 347 Ill. App. 3d at 399, 806 N.E.2d at 730-31.  However, extrajudicial agreements modifying support are unenforceable.  
Smith
, 347 Ill. App. 3d at 399-400, 806 N.E.2d at 731. 

As our supreme court has explained, courts have the exclusive authority to modify child support and are not bound by the parties' agreements as to child support.  
Blisset v. Blisset
, 123 Ill. 2d 161, 167, 526 N.E.2d 125, 127-28 (1988).
  In deciding child-support matters, a court must protect the children's best interests.  
Blisset
, 123 Ill. 2d at 167, 526 N.E.2d at 128.  To allow former spouses to modify a child-support order by creating a new agreement between themselves without judicial approval would circumvent judicial protection of the children's interests.  
Blisset
, 123 Ill. 2d at 167-68, 526 N.E.2d at 128.  Former spouses could agree to modify child-support obligations to benefit themselves while adversely affecting their children's best interests.  A parent cannot bargain away his or her children's interests.  Thus, parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the court's satisfaction, the parties' agreement is in accordance with the children's best interests.  
Blisset
, 123 Ill. 2d at 168, 526 N.E.2d at 128.

In 
Smith
, 347 Ill. App. 3d at 397, 806 N.E.2d at 729,
 the custodial parent sought payment of overdue child-support payments.  The noncustodial parent asserted the custodial parent was equitably estopped from recovering the arrearage because she had agreed to waive the child-support payments as long as he purchased items for the children.  
Smith
, 347 Ill. App. 3d at 399, 806 N.E.2d at 730.  While the Second District affirmed the trial court's finding that no such agreement existed, it further noted that, even if the agreement did exist, it was unenforceable since the parties did not obtain judicial approval.  
Smith
, 347 Ill. App. 3d at 400-01, 806 N.E.2d at 731.
  Thus, the Second District concluded the trial court's rejection of the equitable estoppel defense was not against the manifest weight of the evidence.  
Smith
, 347 Ill. App. 3d at 401, 806 N.E.2d at 732.
  

In this case, the parties' agreement was unenforceable since they sought to usurp the authority of the court by modifying a court-ordered support obligation themselves.  See 
Smith
, 347 Ill. App. 3d at 401, 806 N.E.2d at 732.  Additionally, the child support that had already accrued at the time the parties signed the agreement could not have been modified even by a court.  See 
In re Marriage of Corkey
, 269 Ill. App. 3d 392, 397, 645 N.E.2d 1384, 1388 (1995)
 (noting past-due child-support installments are vested rights that a court cannot modify retroactively).  Accordingly, the trial court's award of back child support that had accrued prior to April 12, 1999, was not against the manifest weight of the evidence.

2. 
After
 
December
 
19
, 
2001

While the agreement itself is unenforceable, Michael did execute consents to the adoption of the children, and the trial court concluded he had proved equitable estoppel until December 19, 2001.  On that date, the withholding of child support put Michael on notice that child support was being collected, ending his reasonable reliance.  The court then terminated the child-support payments when the children were adopted.

That finding is consistent with 
Bodine v. Bodine
, 141 Ill. App. 3d 21, 489 N.E.2d 911 (1986), 
cited by Michael.  There, the noncustodial parent executed a consent to the adoption of the minor children, but the custodial parent decided not to go through with the adoption.  
Bodine
, 141 Ill. App. 3d at 22, 489 N.E.2d at 912.
  The trial court applied the doctrine of equitable estoppel and found the custodial parent was not entitled to child support for the period after the consent was signed to when she filed her criminal nonsupport action.  
Bodine
, 141 Ill. App. 3d at 22-23, 489 N.E.2d at 912.
  On appeal, the Third District affirmed the court's ruling, finding the nonsupport action should have adequately informed the noncustodial parent or at least triggered further investigation into whether his parental rights would be terminated.  
Bodine
, 141 Ill. App. 3d at 23, 489 N.E.2d at 913.

In this case, Michael began investigating whether the children had been adopted after the child-support payment was withheld from his income around December 19, 2001.  Upon learning the adoption had not taken place, Michael resumed visitation with the children and voluntarily made some child-support payments.  Thus, we find the trial court's conclusion the period of estoppel ended on December 19, 2001, was not against the manifest weight of the evidence.
   

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and APPLETON, JJ., concur.